## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                                  No. MJ 10-2661 JB

EMILIO TARANGO-JUAREZ,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Motion for Review of Order Setting Conditions of Pretrial Release, filed October 27, 2010 (Doc. 17)("Motion").  The Court held an evidentiary hearing on November 10, 2010.  The primary issue is whether the Court should review the Honorable Lourdes A. Martinez' October 26, 2010, order setting conditions of pretrial release for Defendant Emilio Tarango-Juarez.  Because Plaintiff United States of America has proved, by a preponderance of the evidence, that E. Tarango-Juarez is a flight risk and, by clear-and-convincing evidence, that he is a danger to the community, the Court will grant the United States' request that the Court review Judge Martinez' order and will order that E. Tarango-Juarez be detained pending trial.

## FACTUAL BACKGROUND

Based on information available to the United States at the time that it filed its motion, the underlying facts pertinent to the Court's detention order are as follows.  Tarango-Juarez is a legal resident alien, and he has lived in the United States since at least 1989.  E. Tarango-Juarez has worked for the same construction company since May of 2006.  He owns his home, on which he

pays the mortgage.  He and his wife care for their special-needs child.

On May 5, 2010, an undercover agent ("UC") from the Lea County Drug Task Force ("LCDTF") met with E. Tarango-Juarez' co-defendant and son, Rigoberto Tarango, at E. Tarango-Juarez' residence at 401 North Cochran in Hobbs, New Mexico, to discuss the purchase of three ounces of methamphetamine.  A short time after the UC arrived at the residence, E. Tarango-Juarez arrived and spoke to R. Tarango, who left the residence to attempt to retrieve the methamphetamine.

While awaiting R. Tarango's return, E. Tarango-Juarez told the UC that they had to be careful, because a white truck had been observed in the area and E. Tarango-Juarez believed that it was an undercover vehicle.  E. Tarango-Juarez went on to tell the UC that the entire neighborhood "knew what he does" and that they keep watch as lookouts for him.  Motion at 2.  He also told the UC that two women who work at the sheriff's office in Hobbs provide him with information regarding possible informants -- which the agents verified after the meeting, as the UC was run through National Crime Information Center from the sheriff's office afterward.

R. Tarango then returned, and told the UC and E. Tarango-Juarez that the source had told him that they could not sell anything at that time because things were "very hot."  Motion at 2. R. Tarango told the UC to come back over the weekend if the UC still wanted to buy the three ounces of methamphetamine.  The UC said that one pound would be much better, and R. Tarango told the UC that he would have the methamphetamine ready by the weekend.

On May 10, 2010, the UC met with E. Tarango-Juarez and R. Tarango about purchasing half of a pound of methamphetamine, and E. Tarango-Juarez told the UC that he had made several attempts to contact his source for the methamphetamine and that the source was having trouble getting the methamphetamine to the area.  E. Tarango-Juarez told the UC that he would call him as soon as he could to complete the sale of a half-pound of methamphetamine to the UC.

-2-

On May 17, 2010, the UC returned to 401 North Cochran to purchase methamphetamine. The UC was able to buy 4.01 ounces of methamphetamine from R. Tarango at Triangle Park in Hobbs for $6,200.00 of LCDTF contingency funds.  On June 8, 2010, the UC traveled again to 401 North Cochran and purchased 113.1 grams of methamphetamine from R. Tarango at Triangle Park for $6,000.00 of LCDTF contingency funds.

On July 16, 2010, the UC received a telephone call from R. Tarango, who asked if the UC was still interested in buying a pound of methamphetamine.  R. Tarango set up the transaction through his cousin, Pilar Armenio Juarez-Parra, who is charged in MJ 10-2662 under 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and 18 U.S.C. § 924(c)(1)(A), for a separate, but related, incident. R. Tarango stated he could not personally be present, because he was working.

During the subsequent transaction, the UC purchased 18.6 ounces of methamphetamine with $19,000.00 in LCDTF contingency funds.  When the UC was exchanging money with Juarez-Parra, Juarez-Parra was uncertain whether a price had been negotiated.  The UC told Juarez-Parra that $19,000.00 was the amount that R. Tarango, E. Tarango-Juarez, and the source decided upon over the telephone earlier in the day for the transaction that day and for future purchases of single pounds of methamphetamine.  The price was favorable -- less than the average initial purchase-price for a pound of methamphetamine, which is usually higher than the price for subsequent purchases.  Upon hearing that R. Tarango and E. Tarango-Juarez had negotiated the price, Juarez-Parra agreed to the price.  Juarez-Parra gave the UC his cellular telephone number, telling him that the next time that the UC needed to purchase more methamphetamine, the UC should call him directly.  Juarez-Parra also indicated that he was E. Tarango-Juarez' cousin.

The transactions were both witnessed by surveillance and recorded on tape.  The United States represents that the tapes of the transactions are being translated from Spanish to English, and

will be provided to E. Tarango-Parra as soon as they are completed.  Additionally, the United States indicates that telephone tolls are available to corroborate the contacts between the Defendants and the UC.

## PROCEDURAL BACKGROUND

E. Tarango-Juarez is charged by complaint with conspiracy to possess with intent to distribute .98 kilograms -- two pounds, 2.6 ounces -- of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A).  On October 26, 2010, Judge Martinez held a detention hearing, where the United States proffered testimony from Immigration and Customs Enforcement Agent Xavier Diaz.  See Criminal Clerk's Minutes at Las Cruces at 1 (dated October 26, 2010), filed October 26, 2010 (Doc. 20).  Based on E. Tarango-Juarez' ties to the community, family, special-needs child, and financial stability, and because a search of his residence revealed no physical evidence, Judge Martinez ordered E. Tarango-Juarez released on a $25,000.00 surety bond, subject to conditions, including electronic monitoring with a GPS equipped ankle bracelet and remaining under house arrest except to go to work.  She stayed her order pending the United States' appeal.  See Order Granting Stay Pending Hearing, filed October 27, 2010 (Doc. 18).

In its Motion, the United States seeks review of Judge Martinez' release order.  Specifically, the United States seeks revocation of Judge Martinez' order and moves the Court to order E. Tarango-Juarez detained pending trial.  See 18 U.S.C. § 3145(a).  The United States argues that E. Tarango-Juarez is a flight risk and a danger to the community.  E. Tarango-Juarez is charged with conspiracy to possess with intent to distribute almost two pounds of methamphetamine.  The United States contends that it presents weighty evidence of E. Tarango-Juarez' guilt, and that E. Tarango-Juarez faces a substantial term of incarceration and likely deportation upon conviction.  Moreover, the United States argues, E. Tarango-Juarez is a citizen of Mexico, and his brother resides there.

Consequently, the United States argues, no condition or combination of conditions will adequately deter E. Tarango-Juarez' flight and ensure the community's safety.  E. Tarango-Juarez contends that he is not a flight risk or a danger to the community, because he contends he is innocent of the crime with which he is charged, he is a long-term resident and homeowner with ties to the community, he has a good employment history, and he cares for his special-needs child.

## STANDARD OF REVIEW BY THE DISTRICT COURT

"The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo."  United States v. Cisneros, 328 F.3d 610, 616 n.1 (10th Cir. 2003).  "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release."  United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992).  See  United States v. Maull, 773 F.2d 1479, 1481 (8th Cir.1985)(stating that a district court's review of magistrate judge's order setting bond was de novo).

## STATUTORY PRESUMPTION AGAINST RELEASE

A statutory presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if" a court "finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act."  18 U.S.C. § 3142(e)(3).  See United States v. Villapudus-Quintoro, No. 08-2308, 2009 WL 141931, at *1 (10th Cir. Jan. 22, 2009)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders).

Under section 3142(e), upon a finding of probable cause that the defendant has

committed a federal drug offense carrying a maximum prison term of ten years or
more, a rebuttable presumption arises that no conditions of release will assure
defendant's appearance and the safety of the community. Once the presumption is
invoked, the burden of production shifts to the defendant. However, the burden of
persuasion regarding risk-of-flight and danger to the community always remains with
the government. The defendant's burden of production is not heavy, but some
evidence must be produced. Even if a defendant's burden of production is met, the
presumption remains a factor for consideration by the district court in determining
whether to release or detain.

United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991).

To determine whether the defendant has rebutted the presumption, the court must consider:

(i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the

defendant; (iii) the history and characteristics of the defendant, including family ties, employment,

financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the

nature and seriousness of the danger to the community or to an individual that would be posed by

release. See 18 U.S.C. § 3142(g). Should the defendant satisfy his burden of production, the United

States must then show by a preponderance of the evidence that the defendant presents a risk of flight

and by clear-and-convincing evidence that the defendant presents a danger to the community. See

United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he

burden of persuasion regarding risk-of-flight and danger to the community always remains with the

government."). Notably, however, even if the defendant meets his burden of production, "the

presumption remains a factor for consideration by the district court in determining whether to

release or detain." United States v. Stricklin, 932 F.2d at 1355 (citation omitted). Accord United

States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). "The rules concerning the admissibility of

evidence in criminal trials do not apply to the presentation and consideration of information at the

[detention] hearing." 18 U.S.C. § 3142(f).

## ANALYSIS

Given the quantity of narcotics involved, that E. Tarango-Juarez faces all-but certain deportation should he be convicted, that he is a citizen of Mexico, where is brother lives, and the strength of the United States case, a preponderance of the evidence supports finding that Tarango-Juarez is a flight risk. Clear-and-convincing supports finding that Tarango-Juarez also poses a danger to the community, based on the statutory presumption and his involvement in the conspiracy to possess with intent to distribute almost two pounds of methamphetamine. Accordingly, the Court will order Tarango-Juarez detained pending trial.

## I.   THE STATUTORY PRESUMPTION IS PRESENT.

Probable cause exists to believe Tarango-Juarez conspired to possess with intent to distribute an A-level quantity of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A); there is evidence that: (i) E. Tarango-Juarez participated in negotiating the purchase-price for 18.6 ounces of methamphetamine on July 16, 2010; (ii) the initial meeting among the UC, E. Tarango-Juarez, and his co-Defendant son occurred at E. Tarango-Juarez' residence; and (iii) the transactions were recorded on tape. Because probable cause exists to believe E. Tarango-Juarez violated the statutory provisions -- which carries a ten year minimum sentence under 21 U.S.C. § 841(b)(1)(A)(viii) -- a presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(stating this presumption applies to Controlled Substances Act violations "for which a maximum term of imprisonment of ten years or more is prescribed").

## II.   THE COURT CONCLUDES THAT E. TARANGO-JUAREZ IS A FLIGHT RISK AND A DANGER TO THE COMMUNITY.

The Court concludes that E. Tarango-Juarez must be detained pending trial. The United

States argues that E. Tarango-Juarez must be detained pending trial because he is, by a preponderance of the evidence, a flight-risk, and, by clear-and-convincing evidence, a danger to the community.  The United States contends that it presents strong evidence supporting a conviction under 21 U.S.C. § 841(a)(1), (b)(1)(A), which would subject E. Tarango-Juarez to a lengthy term of incarceration and likely deportation.  Additionally, the United States argues, E. Tarango-Juarez is a citizen of Mexico, and his brother resides there.  As such, the United States contends, no condition or combination of conditions will adequately deter E. Tarango-Juarez' flight and ensure the community's safety.

E. Tarango-Juarez asserts that he has strong ties to the community.  He is a long-term resident alien, and he owns his home.  He has a good work history, and his employer would rehire him if he is released.  He is married and cares for his special-needs child, and, with the exception of his brother in Mexico, all of his family resides in the United States.

The Court concludes that E. Tarango-Juarez meets his burden of production and rebuts statutory presumption favoring detention.  See United States v. Stricklin, 932 F.2d at 1355 ("The defendant's burden of production is not heavy, but some evidence must be produced.").  While E. Tarango-Juarez has rebutted the presumption, it "remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Stricklin, 932 F.2d at 1355 (citation omitted).  The Court further concludes that the United States has shown, by a preponderance of the evidence, that E. Tarango-Juarez presents a risk of flight, and, by clear-and-convincing evidence, that he presents a danger to the community.  See United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.").  The Court also concludes that no conditions will adequately deter E. Tarango-Juarez' flight.  The Court

-8-

is concerned that E. Tarango-Juarez would be released into the custody of his wife in the home where he is alleged to have trafficked drugs.  The evidence suggests that his wife did not have much control over E. Tarango-Juarez before his arrest, and the Court is not convinced she would be able to exercise control upon his release.  Additionally, the United States presents weighty evidence of E. Tarango-Juarez' guilt,[1] and E. Tarango-Juarez has a strong incentive to flee to Mexico, because he is facing a substantial sentence and deportation.  Because the Court "finds that no condition or combination of conditions will reasonably assure the appearance of [E. Tarango-Juarez] as required and the safety of any other person and the community, [the Court] shall order the detention of the [E. Tarango-Juarez] before trial."  18 U.S.C. § 3142(e)(1).

## A.      E. TARANGO-JUAREZ IS A FLIGHT RISK.

The Court finds, by the preponderance of the evidence, that E. Tarango-Juarez is a flight risk. He faces charges that carry substantial sentences.  The United States presents weighty evidence of E. Tarango-Juarez' gulit.  E. Tarango-Juarez is an alien with a brother in Mexico, and he faces deportation if he is convicted.

### 1.      The Nature and Circumstances of the Crime Charged Demonstrate E. Tarango-Juarez Is a Flight Risk.

The crime with which E. Tarango-Juarez is charged carries substantial penalties.  As presently charged, E. Tarango-Juarez is responsible for A-level narcotics, which carries a ten-year statutory minimum term of imprisonment, and the United States estimates E. Tarango-Juarez' Sentencing Guideline range upon conviction at trial will be approximately 135 to 168 months

---

[1] At the November 10, 2010 hearing, E. Tarango-Juarez expressed concerns about the United States' evidence, and noted that the United States has not disclosed the tapes recording the UC's interactions with the Defendants or otherwise provided discovery.  The Court's order is without prejudice to E. Tarango-Juarez renewing his request for release before trial if, upon reviewing the United States' evidence, the United States' representations are unsupported.

imprisonment.  See 21 U.S.C. § 841(a)(1),(b)(1)(A)(viii).  Additionally, the collateral consequences

that attend a conviction under 21 U.S.C. § 841 make it particularly likely that E. Tarango-Juarez will

flee if released before trial.  Specifically, conviction under 21 U.S.C. § 841 would mean that E.

Tarango-Juarez would likely face deportation from the United States.  See United States v.

Pina-Aboite, 97 F. App'x 832, 836 (10th Cir. 2004)(holding a district court did not clearly err in

considering a defendant's "deportable status" in deciding to detain him pending trial).

### 2. The Weight of the United States' Evidence Against E. Tarango-Juarez Shows He Is a Flight Risk.

Diaz' testimony demonstrates that the "the weight of the evidence offered in support of [the

charge against E. Tarango-Juarez] is significant," giving him ample reason to flee if he is released

pending trial.  United States v. Cisneros, 328 F.3d at 618 (recognizing that the United States "need

not offer all of its evidence" at the detention stage of the criminal proceeding).  While E. Tarango-

Juarez maintains his innocense, and he has made no incriminating statements to investigators, the

UC was present when E. Tarango-Juarez participated in negotiations for the sale of

methamphetamine, including the price therefore.  The transactions took place at E. Tarango-Juarez'

residence.  The transactions were recorded on tape and corroborated by telephone tolls.  The

proffered evidence demonstrates the United States' case against E. Tarango-Juarez is formidable,

making E. Tarango-Juarez' conviction and, in turn, his imprisonment and deportation, a very real

possibility for him.

### 3. E. Tarango-Juarez' History and Characteristics Evidence That He Is a Flight Risk.

E. Tarango-Juarez' history and characteristics cut both ways, but offer further support for

finding that he is a flight risk.  Some of his characteristics demonstrate ties to the community.  E.

Tarango-Juarez Tarango-Juarez has lived in the United States since at least 1989.  He has a good

work history, and his employer represents it will hire him back if he is released.  E. Tarango-Juarez and his wife care for their special-needs child.  With the exception of a single sibling, his family resides in the United States.  He owns a home, for which he makes mortgage payments, and the payments on the property are consistent with his legitimate earnings.

On the other hand, although E. Tarango-Juarez is a legal permanent resident of the United States, he is a Mexican citizen with ties to Mexico.  E. Tarango-Juarez provided information to pretrial services that he has a sibling that lives in Mexico who he visited a few years ago.  E. Tarango-Juarez appears to have ample resources and opportunity to abscond.  See United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003)(noting a defendant's "close family in Mexico . . . and that in the past Cisneros has traveled to Juarez with a sister and other family members").  Additionally, while E. Tarango-Juarez does not have significant criminal history -- a conviction of simple assault -- he appears to be ineligible for "safety valve" consideration.  E. Tarango-Juarez therefore faces a statutory minimum of ten years.  See 21 U.S.C. § 841(a)(1),(b)(1)(A)(viii).

In sum, by a preponderance of the evidence, E. Tarango-Juarez is a flight risk given the serious penalties he faces, the all-but certain immigration consequences of a narcotics trafficking conviction for him, the strength of the United States' case, and E. Tarango-Juarez' ties to Mexico.  Given E. Tarango-Juarez' Mexican citizenship and strong ties to that country, E. Tarango-Juarez has significant reason to abscond and avoid incarceration.

## B. E. TARANGO-JUAREZ IS A DANGER TO THE COMMUNITY.

Because the United States has presented probable cause supporting E. Tarango-Juarez' federal charges, the statutory presumption that E. Tarango-Juarez poses a danger to the community is triggered.  Even though E. Tarango-Juarez has rebutted that presumption, the presumption remains a factor for this Court to consider in making its ultimate determination regarding detention.  See

-11-

United States v. Stricklin, 932 F.2d at 1355 ("Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain."). E. Tarango-Juarez participated in negotiating the purchase-price for 18.6 ounces of methamphetamine on July 16, 2010, and the initial meeting among the UC, E. Tarango-Juarez, and R. Tarango occurred at E. Tarango-Juarez' residence. E. Tarango-Juarez' role in negotiating the purchase-price of a large amount of methamphetamine indicates that E. Tarango-Juarez is not a drug trafficking novice. Thus, beyond the presumption, the federal charges provide reason to deem E. Tarango-Juarez a danger to the community. See United States v. Pina-Aboite, 97 F. App'x at 836 (recognizing that 18 U.S.C. § 3142 "danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community" (citing United States v. Cook, 880 F.2d 1158, 1161 (10th Cir.1989)). Consequently, the Court finds that, by clear-and-convincing evidence, E. Tarango-Juarez presents a danger to the community.

**IT IS ORDERED** that the United States' Motion for Review of Order Setting Conditions of Pretrial Release, filed October 27, 2010 (Doc. 17), is granted and Defendant Emilio Tarango-Juarez shall be detained pending trial. The Court's order is without prejudice to E. Tarango-Juarez renewing his request for release pending trial after reviewing the United States discovery.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Amanda Gould
  Assistant United States Attorney
Las Cruces, New Mexico

       *Attorneys for the Plaintiff*

Herman E. Ortiz
Attorney at Law
Garfield, New Mexico

       *Attorney for the Defendant*